**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

August 20, 2026

VIA ECF
All Counsel of Record

**LETTER ORDER**

**Re: Robert Porcelli v. Port of Newark Maintenance and Repair, LLC**
**Civil Action No. 24-504**

Dear Litigants:

Before this Court is Defendant Port Newark Maintenance and Repair, LLC's ("Defendant") Motion to Dismiss Plaintiff Robert Porcelli's ("Plaintiff") Third Amended Complaint, ECF No. 26 ("TAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6), see ECF No. 27 (the "Motion"). Plaintiff opposes the Motion. See ECF No. 29. For the reasons set forth below, the Motion is **GRANTED**.

## I. BACKGROUND[1]

### A. Employment History

This action arises out of the Plaintiff's allegedly unlawful termination.

Defendant hired Plaintiff in 2008 or 2009 as a crane mechanic. See TAC ¶ 4. In 2013, Plaintiff was diagnosed with cancer and underwent treatment including chemotherapy. See id. ¶ 23. Throughout his employment, Plaintiff was intermittently absent due to ongoing medical issues. See id. ¶ 26. In January 2022, Plaintiff received a written warning for "seven unexcused absences and 28 instances of lateness or early departure." Id. ¶ 33. Roughly six months later, in early July 2022, he reported to his supervisor multiple violations of laws that he believed Defendant was committing. Id. ¶ 304. For example, Plaintiff alleges that he reported he was not appropriately compensated for overtime hours. Id. ¶¶ 380–450. Plaintiff also alleges that he told his supervisor that Defendant was in violation of various Occupational Safety and Health Act ("OSHA") regulations and that Defendant was operating "Chinese-manufactured ZPMC container cranes," which posed "critical national security threats." Id. ¶¶ 156–236 (National Security

[1] The factual background of this dispute was fully described in the Court's January 31, 2025 Letter Order granting Defendant's First Motion to Dismiss, so the Court will explain only the facts relevant to resolving the instant Motion. See ECF No. 15 ("January Order")

Threats); id. ¶¶ 237–379 (OSHA). About a month later,[2] on August 9, 2022, Defendant suspended Plaintiff for one week citing additional attendance violations. See id. ¶ 502. Defendant suspended Plaintiff again in September for two weeks for attendance violations. See id. ¶ 504. In January 2023, Defendant received a fourth attendance violation,[3] which carried a three-week suspension. See id. ¶ 506. One week later, Plaintiff nearly fell from a crane, sustaining a laceration on his leg. See id. ¶¶ 53–55. He was terminated later that day. See id. ¶¶ 72–73.

### B. Procedural History

Plaintiff initiated this action in January 2024 by filing a "draft" complaint to "preserve the statute of limitations," indicating that it would be "amended and refiled within the coming weeks." See ECF No. 1 ("Complaint"). Three months later, the Court granted Plaintiff's Motion to Amend that Complaint. See ECF Nos. 3, 4. Defendant moved to dismiss the Amended Complaint on the basis that, inter alia, Plaintiff's claims (1) were subject to a collective bargaining agreement by which he was bound, and (2) had already been adjudicated in a related arbitration. See ECF No. 9.1 at 11–26. The Court agreed and dismissed seven of Plaintiff's eight claims with prejudice on that basis; the Court granted Plaintiff leave to replead his New Jersey Conscientious Employee Protection Act ("CEPA") claim. See January Order. The Court cautioned that "any amended complaint should carefully articulate the factual basis underlying a CEPA claim." January Order at 8–9.

Plaintiff filed a Second Amended Complaint, which was first rejected by the Clerk's Office because it was not signed by counsel. See ECF No. 16; March 4, 2025 Docket Entry. Plaintiff subsequently filed a signed version of the Second Amended Complaint which Defendant moved to dismiss. See ECF Nos. 17, 19 ("Defendant's Second MTD"). In opposing Defendant's Second MTD, Plaintiff filed a Declaration, ECF No. 21.1, which contained additional factual allegations and a Certification of Counsel in Sur-Reply, ECF No. 23.2, setting forth additional facts and legal arguments. This practice violated Local Civil Rule 7.2(a), so the Court terminated Defendant's Second MTD. See ECF No. 25 at 2, n.1 ("October Order"). In the October Order, the Court provided Plaintiff "one final opportunity to file a Third Amended Complaint as to his only remaining CEPA claim." October Order at 2.

The Third Amended Complaint before the Court is Plaintiff's "final opportunity" to state a CEPA claim.

## II. Legal Standard

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To

---

[2] Plaintiff alleges that his whistleblowing complaints were made in "July 2022 (beginning of month)," but does not specify a date. Id. ¶ 304.

[3] Plaintiff labels this as his "Third Adverse Action," which the Court assumes is a typographical error because elsewhere Plaintiff alleges that this was his "fourth warning," id. ¶ 49, and because he alleges that he received warnings and suspensions on three earlier occasions. See id. ¶ 33 ("Plaintiff received his first written warning [on January 11, 2022]"); id. ¶ 37 ("Plaintiff received his second written warning [on August 9, 2022]"); id. ¶ 43 ("Plaintiff received his third written warning and two-week suspension . . . on August 21, 2022").

survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Simultaneously, a pleading that includes a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). Rule 8 emphasizes "clarity and brevity." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 (4th ed. 2026). "As the word 'Rule' implies, Rule 8 is not merely aspirational; if a complaint does not comply with the Rule, it may be stricken." Mendez v. Draham, 182 F. Supp. 2d 430, 433 (D.N.J. 2002).

## III. ANALYSIS

### A. Rule 8

Plaintiff's TAC is the fourth complaint filed in this action. As described above, Plaintiff's earlier complaints were dismissed or rejected for a variety of reasons including Counsel's failure to sign the complaint, see March 4, 2025 Docket Entry, and the submission of a Declaration and Certification of Counsel submitted in opposition to Defendant's Second MTD, see ECF No. 25 at 2, n.1. Despite the Court cautioning Plaintiff to "carefully articulate the factual basis underlying a CEPA claim," Plaintiff has not done so here. See January Order.

The sheer length of the TAC raises significant Rule 8 concerns. Plaintiff's Amended Complaint contained eight claims and was 40 pages long with 218 paragraphs. See ECF No. 5. Seven of those eight claims were dismissed. See January Order. It is illogical that Plaintiff's one-claim TAC is over three times as long, spanning 122 pages and 784 paragraphs. See TAC. Many of the paragraphs contain sub-paragraphs with bullet-style allegations. See, e.g. id. ¶¶ 235, 244, 270, 295. The length of Plaintiff's one-count TAC alone indicates that it is unnecessarily verbose. See, e.g., Adderly v. Stofko, 646 F. App'x 138, 139 (3d Cir. 2016) (affirming dismissal of 544-paragraph complaint for failing to comply with Rule 8); In re Westinghouse Securities Litig., 90 F.3d 696, 703 (3d Cir. 1996) (affirming dismissal of 240-page, 600-paragraph complaint based on Rule 8 after the court had already "narrowed" plaintiff's claims); Untracht v. Fikri, 368 F. Supp. 2d 409, 413 (W.D. Pa. 2005) (dismissing amended complaint which contained 112 pages and 655 paragraphs).

Aside from the length, the TAC is needlessly repetitive. For example, Plaintiff explains no less than twenty times that he received "9 years" of medical accommodations before receiving his first warning. See, e.g., TAC ¶¶ 119(d), 150, 153, 231, 729(c), 743(b), 746(a), 748(a). Plaintiff states ten separate times the fact that OSHA regulates "workers at heights of 20-40+ feet" and/ or that falling from such heights may lead to catastrophic injury or death. See, e.g., id. ¶¶ 119(b), 270, 289, 709(a)(iv). Seven times, he also states that he "gashed [his] leg." See, e.g., id. ¶¶ 56, 580, 590, 597, 760. Excessive repetition is grounds for dismissal under Rule 8. See Untracht, 368 F. Supp. 2d at 414 (describing that "paragraphs one through sixty-three recount in repetitive and impertinent language the events leading up to July of 1999"); Mendez, 182 F. Supp. 2d at 433

(explaining that "[m]uch of the pointless redundancy arises from [plaintiff's counsel's] apparent insistence upon repeating the same allegations over and over").

The purpose of the "notice pleading" concept required by Rule 8 is to constrain rambling pleadings which "place[] an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Kamdem-Ouaffo v. Huczko, 810 Fed. Appx. 82, 83 (3d Cir. 2020) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). Here, like the complaint in Mendez, the "language of each individual allegation, while not a model of efficient prose, is at least comprehensible, but when considered on the whole, [] the Complaint is utterly unclear." Mendez, 182 F. Supp. 2d at 433. As such, it would be unduly burdensome to require Defendant to respond to and defend against each allegation in the TAC because of its length and repetition.

Because Plaintiff's TAC fails to comply with Rule 8, it must be dismissed.

**B. CEPA**

Even if the TAC was pled with the clarity and brevity demanded by Rule 8, Plaintiff has not plausibly alleged a CEPA claim. CEPA prohibits an employer from taking "retaliatory action" against an employee for protected conduct. See N.J.S.A. § 34:19-3 (2025). To state a claim under CEPA, Plaintiff must plausibly allege that (1) he reasonably believed Defendant was violating a law or clear mandate of public policy; (2) he engaged in whistleblowing activity as described by CEPA; (3) he suffered an adverse employment action; and (4) a causal connection exists between the alleged whistleblowing activity and the adverse employment action. See Verdone v. Rice & Rice, PC, 724 F. Supp. 3d 366, 385–86 (D.N.J. 2024); Cohen v. BH Media Grp., Inc., 419 F. Supp. 3d 831, 854 (D.N.J. 2019). This is a conjunctive test; the absence of one element is fatal to the claim. As such, because Plaintiff does not adequately allege a causal connection between the alleged whistleblowing activity and the adverse employment actions he suffered, his CEPA claim fails.

To plausibly allege causation, "a plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" Robles v. U.S. Envtl. Universal Services, Inc., 469 Fed. Appx. 104, 107 (3d Cir. 2012) (quoting Donofry v. Autotote Sys., Inc., 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)). Courts consider the circumstances surrounding the alleged adverse employment action to infer causation. Id. For example, a plaintiff may establish causation through temporal proximity between the protected conduct and the alleged retaliation. See Maimone v. City of A. City, 903 A.2d 1055, 1064 (N.J. 2006). Courts will also consider inconsistencies or contradictions in the employer's proffered reasons for its action. See id. at 1065 (describing the defendant's implausible explanations for plaintiff's reduction in compensation and loss of other benefits); Knight v. Vitamin Shoppe, Inc. Exec. Severance Pay Policy, No. 21-2636, 2022 WL 3593882, at *3 (D.N.J. Aug. 23, 2022) (explaining that "inconsistencies or contradictions in the employer's proffered legitimate reasons for its action" may be considered when determining causation").

Plaintiff alleges two categories of adverse employment consequences: (1) failure to compensate for overtime, see TAC ¶ 426; and (2) warnings, suspensions, and termination, see id. ¶¶ 502–511. A retaliation claim cannot succeed when adverse action comes before the protected

activity. See Glanzman v. Metro Mgmt. Corp., 391 F.3d 506, 516 (3d Cir. 2004). Plaintiff does not plausibly plead causation because, according to the TAC, both categories of adverse employment actions alleged occurred or began to occur before Plaintiff blew the proverbial whistle.

First, Plaintiff alleges that he suffered an adverse employment action when he was not properly compensated. See TAC ¶ 426. Plaintiff alleges that he engaged in whistleblowing when he "reported issues concerning his wages and underpayment to his manager in or about the Summer of 2022." Id. ¶ 403. This means that Defendant's failure to pay overtime preexisted any whistleblowing activity by Plaintiff. Plaintiff's allegation that "even after reporting wage violations, Plaintiff continued to be paid straight-time rates instead of contractually required premium rates," does not form the basis of a retaliation claim but rather a claim of ongoing wage and hour law violations. Id. ¶ 426 (emphasis added). The Court already dismissed that claim with prejudice. See January Order. As such, Plaintiff has not plausibly pled a CEPA claim stemming from Defendant's alleged failure to fairly compensate him.

Second, Plaintiff also has not plausibly alleged causation as to the adverse employment actions he suffered in the form of warnings, suspensions, and termination. Plaintiff alleges that he made his first whistleblowing complaint in early July 2022, after which "Defendant and its managers' attitude toward him soured." TAC ¶ 519. But Plaintiff also alleges that he "received his first warning for seven unexcused absences and 28 instances of lateness or early departure" in January 2022, six months before his whistleblowing activity. Id. ¶ 33. Attendance issues also appear to have formed the bases for his August 2022, September 2022, and January 2023 suspensions and his January 2023 termination. See id. ¶¶ 37, 43, 49, 75, 78. Adverse employment action must follow a whistleblower complaint, see Glanzman, 391 F.3d at 516; here, the attendance warning preceded Plaintiff's reports and continued after in the form of suspensions and termination.

Even if Plaintiff had not already received a warning based on poor attendance in January 2022, Plaintiff's temporal argument cannot save the causal element of his CEPA claim. At least a month elapsed between Plaintiff's early July 2022 alleged whistleblowing and his August 9, 2022 suspension. See TAC ¶¶ 304, 333. Courts have found "periods of six weeks or even three weeks between protected activities and adverse employment actions as insufficiently close to support a prima facie case under CEPA alone." Gligor v. Alley Cat Allies, Inc., No. 20-19956, 2023 WL 3558191, at *4 (D.N.J. May 18, 2023) (collecting cases).

Plaintiff therefore fails to plausibly allege that his warnings, suspension, and termination were causally connected to his whistleblowing complaint. His CEPA claim must be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF No. 27, is **GRANTED**. Plaintiff's Third Amended Complaint is **DISMISSED WITH PREJUDICE**. The Clerk of the Court is directed to **CLOSE** the case.

**SO ORDERED.**

***s/ Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**